We have five cases on the calendar this morning, a Veterans case, a Patent Office interference case, two District Court patent cases, and one government employee case which is being submitted only in the briefs and will not be argued. The first case is Barnett Benjamin v. Secretary of Veterans Affairs 1271-27. Mr. Bender. Good morning, Your Honors. Thomas Bender on behalf of the appellant Barnett Benjamin. This appeal involves the question of the proper interpretation of the early effective date provisions of Section 38 CFR 3.156C. As a preliminary matter, I think we need to start with the understanding that Subsection A of that regulation permits a finally adjudicated denial of benefits to be reopened based upon new and material evidence. So the new and material evidence was the examination in 2004, right? And he got the benefit of the 2000 date because that reopened claim was pending. So where was the interpretation here and why isn't it very simple? He had NME and he got the benefit of the date 2008, four years earlier. Because Subsection C provides an exception to the default rule that the effective date for a claim that is reopened and granted is the date that the request to reopen was made. That's why he got 2000, not 2004. That's right, but it is our position that Subsection C comes into play when that reopened claim grants service connection based in whole or in part on service department records that were available to the VA decision makers in the prior adjudication that denied benefits. Even if they were addressed and discussed in the adjudication? Yes, and the reason that I say that is that there are three basic reasons why it would come within that. The primary dispute between the parties is that we say that the language of the pre-2006 version of 3.156 that talks about whether the final before or after the decision of the VA means our position is that... Before it becomes final. Exactly. As opposed to when before the decision. Right, and our position is in this particular case, the records, the service department records in question that became part of the reason that his claim was granted upon reopening were received by the department prior to the initial RO decision that denied benefits. Why would it make sense? Let's take a case in which they were available before the initial RO decision. They were discussed extensively in the RO decision and found to be insufficient. Now you could challenge that on two grounds later, but that's not what's involved here. So why should a later reopening based on those records result in an earlier effective date? Q is not available here because our position is that 3.156 is a remedial provision that says that in certain circumstances where the reopened claim has been entitled to that it is appropriate to have an effective date that goes back to the date of the original claim. I'm confused. How can it be new evidence if it was before the RO when the initial determination was made? The three reasons for our argument are that literally speaking, the service department records that are received by the RO before the decision are literally service department records received before the decision has become final. They also are literally new evidence, which is defined as evidence that has not previously been submitted to VA decision makers. If that were the only reason, that would not be a very strong case. But the second reason is the comparison of the language of the pre-2006 version with the post-2006 version. The post-2006 version specifies that the earlier effective date provisions come into effect when the service department records are received after any decision. Now, the secretary takes the position that service department records received before or after the decision becomes final means the same thing as received after any VA decision. And I submit that they clearly don't mean the same thing because one of them involves service department records that are received literally before a VA decision. No, no, before the VA decision becomes final. There's a difference, I take it, between the date of the VA decision and the date that it becomes final. And that seems critical to the analysis of this provision. You do agree with that proposition, right, that there is a difference between the date of the decision and the date the decision becomes final. Yes, there is a difference between that. Before something can become the evidence that is submitted after the decision, but before or after the decision becomes final. Here's the crux, though. Let me make sure. Am I right so far? Yes. Okay. But I still think that in terms of the remedial aspect of the premise of 3.156, it doesn't matter whether the records are received before the RO decision. Then the question is, why are they new and material evidence? I mean, it seems to me your argument has to be that new and material evidence, as used in the old version of 1.56c, means something different from what it means in 1.56a. Because otherwise, evidence that comes in before the decision isn't new and material evidence. I think we all can agree with that. Well, yes. Well, I think that it does. It does what? It does. It is different in a and c. Okay, so that's the crux of your argument, isn't it, really? That's part of the argument. That the beginning terms of 1.56c, the old version, reference to new and material evidence really means something different from what it meant. Well, I mean, if you take the exact definition of new and material or new evidence in subsection a, evidence not previously provided to or received by a VA duty. But that would define new evidence as anything that isn't duplicate. That's true, Your Honor. Which is not the way new and material evidence is defined. And that's why our argument goes further than that. And that's why I think the crux of my argument, actually, is the remedial aspect of this decision. And this is reminiscent of the problem that you pointed out, Justice Dike, in your concurring opinion in Cook v. Principi, where the question was whether or not a failure in the duty to assist could form the basis for a cue claim. And the court decided that it could not because you're relying on evidence that was not obtained, that you don't know whether or not it would have definitely changed the outcome, and it was not evidence of record here. This is essentially reminiscent of that because… Well, it's reminiscent of it except for the fact that the evidence was received before the decision. And let's say there are two kinds of evidence. There are service records that are received before the decision in the ordinary course, and then there are service records that are received in a supplemental report. The service records that were there originally before the decision can't be the basis for a reopening for new evidence. They can't invoke the retroactivity provision here, right, because this is limited to service records that come in a supplemental report, correct? I don't believe that is correct because when you review the Federal Register publication that's trying to describe the reasons why they made the changes in 2006, one of the things that they said in that Federal Register is that we don't require a supplemental report. They are talking that it doesn't necessarily have to be a supplemental report if it's new service department records that come into play. I'm not understanding what you're saying. Are you saying that any service records that were available before the decision become subject to this possibility of retroactive… in the original decision stream that denied benefits, and those records subsequently play a part in granting benefits in the reopened claim, then Subsection C is triggered? Whether they came in as a supplemental report or not. That's correct. And I think that if we look at the facts of this particular situation, it might explain more clearly what our position is. Here, it's almost the opposite of the situation where they denied the claims and then later on, service department records came in and the claim was reopened, and based upon those service department records and the other evidence in the record, they granted the claim. Here, the service department records were there. Mr. Benjamin made a claim for psychological injury, and he told them that he thought that it related. This was in 1981, and he told them that he thought it related back to the treatment that he received in service in 1974. The regional office made a request for those records and scheduled an examination for him. They got the records. They canceled the examination. Now, the examination is something that would have determined or could have determined whether or not the condition that he suffered had a nexus to the condition that he suffered and was treated for in service. When he reopened his claim in 1982, this time he was examined by a VA examiner. They determined they still had his service department records that showed the treatment in service. This time, they had an examination. They diagnosed him with simple schizophrenia, but there was no indication that the examiner was asked or that he gave any indication as to whether or not there was a nexus between that present condition and the in-service condition that he was treated for. It wasn't until two decades later that his claim was reopened again. This time, they asked the examiner, tell us what his current condition is. Tell us whether or not it's related to or has a nexus with what he was treated for in 1974 and whether that condition in 1974 was related to service. Mr. Bender, you wanted to save three minutes. You're into that time now. Would you like to save it or use it? I will use it, Your Honor. I will just finish up this point. This time, the examiner emphatically defined exactly what that yes, the in-service condition triggered his schizophrenia. He suffered that schizophrenia upon departure from the service, and it is related to the present chronic psychotic schizophrenia that he has now. He does not have an acute claim. To say that he should have, as might have been suggested, to say that he should have filed a notice of appeal, that they failed to get him the examination that he required to fully develop his claim back in 1981 or 1982. Here's a veteran who's unrepresented, who's suffering from schizophrenia. The fault shouldn't rely on him. The fault should be on the rating official who had a duty to fully develop the claim, even in 1981, by regulation. I'll save the remaining minutes for it. Let me make sure I understand the breadth of your reading of the at least former 156C, because if I understood before you went into your recitation of the facts of this case, the legal position that you spelled out seemed to me to be sweepingly broad. What I understood you to be saying is if the claim is reopened and the decision on reopening the claim is based in part on service records, then you go all the way back to the initial claim date. Yes. Actually, under the regulation, he's entitled to a retrospective determination of disability from the date of the claim that he submitted the request to reopen to the date of the original claim. Right. So that would seem to sense almost all cases involved in part reliance on service records. That happens in virtually every case, it seems to me, or at least in a large number of them. That seems to me would become essentially the default rule, as opposed to what I understand to be the default rule now, which is with a reopening, you go back to the date of your reopened claim that you submit your new and material evidence. Am I wrong in reading the implications of your argument? I'm not sure that it is implicated that far. It is a broad implication, but there may be some reopenings that are granted that aren't based upon the service department records. No, but you said if the decision ultimately that's made on reopening is based in any degree on service records, which, I mean, you've got to make a decision which is based on a number of factors, some of which are going to be presumably service records, in most all cases, wouldn't you agree? It may be in most cases, but it may not be in all cases. Not in all cases, I suppose that's right, but it seems to me what you're doing is you're making 156C, at least the old version, applicable in a large majority of cases, as opposed to being an exception to the general rule. I am. I am asking for that broad interpretation, essentially because of the failure of the VA to fully develop the claim in 1981, in 1982, and when they finally did it two decades later, he got the benefits, but there were benefits that if they had done what they did in 22 years later, in 2000, 2004, if they had done that in 1981 and 1982, he would have had an effective date at that time. Thank you, Your Honor. Thank you, Mr. Brando. We'll give you one minute of rebuttal time. Thank you, Your Honor. Ms. Hossford. May it please the Court. Mr. Benjamin's interpretation of Section 3.15… I suppose we had a situation where the supplemental report came after the RO decision within the one-year period, but then the case went to the Board, and the Board considered the supplemental report. Would this provision be applicable or not? I believe that that issue, an issue very similar to that, came up recently in the Slayton case, and I think that the Court ultimately affirmed the Veterans Court's finding that that would not merit an earlier effective date, but I'm not confident on that. And the reasoning is because what? Because it wasn't. This is a decision of our Court or the Veterans Court? I believe it was this Court. The Board, at some point, the material was actually considered by the Veterans Administration. So in that case, if the Board is conducting de novo review and actually considered the material, then you're not seeking reconsideration based upon new material evidence or records that were not available at the time the decision was made. I'm not positive about that, but that's not this case. I take it the idea being that the Secretary is who's considering it, and the Secretary is the Board and the RO. Exactly. It's just an internal mechanism. Right, but in this case... It may not really be the way things work, but that's the theory, at least, I guess. Right. In this case, the records were before the Secretary, the regional office, when they made their initial decision in 1981, and then when they reopened and relooked at Mr. Benjamin's claim in 1982. So the records were clearly considered. And 3.156C, based on its plain language and the VA's consistent interpretation, which is entitled to controlling weight, does not apply to records that were available at the time in the original decision. The language clearly stated, even in the 2005 version, that the records had to be submitted before or after the decision has become final. So it assumes that there's already a decision before those records come in. To the extent that Mr. Benjamin claims that the change to the regulation in 2006 somehow establishes that his interpretation of the earlier version is correct, he is ignoring the legislative history or the regulatory history of that new regulation. The proposed rule clearly states that the purpose of the old regulation was to help veterans when the VA receives records that were unavailable at the time that VA previously decided a claim for benefits. And those records lead to an award of benefits that was not granted with the previous decision. It could not be clearer that VA's position on that issue was discussed in the Veterans Court's Mayhew decision and then the Mayhew decision cites to Vigil v. Peek, another Veterans Court decision where the Veterans Court held that the interpretation of the new 3.156C and the old 3.156C are identical. So there's absolutely no basis upon which to argue that Section 3.156C ever allowed reconsideration at an earlier effective date based upon records that were available when the decision was actually made. I'm wondering whether, though, there might be some situations in which Mr. Benjamin might have a point, though it might be difficult to reconcile with the language of the regulation, where you have a supplemental report which comes shortly before the RO decision and the veteran doesn't have a real opportunity to comment on those records or to argue the point before the RO. Isn't there potentially some unfairness there because of the RO's late receipt of the supplemental report? I don't know how much argument on the part of the veteran actually takes place before an RO decision is issued, but there is the presumption of regularity and the presumption that all records are considered when the VA issues its decision. I'm not really addressing the question of whether the RO decision considered the records. I'm assuming that they did, but that the problem is because of the late supplemental report that the veteran hasn't had the opportunity to address what's in the supplemental report before the decision is rendered. That obviously is not the case here because Mr. Benjamin's claim was reopened in 1982 and the VA reached the same decision and that provided him ample time to make such comments. But to the extent that that would happen, I think we have to assume that if the VA thought that a claimant required more time to respond, they would give him more time. There's no indication here that Mr. Benjamin attempted to contact the VA or make some sort of comment about the records before they were considered by the VA. I mean, the regulations have to draw a line somewhere. If he disagreed, he also could have filed an appeal. I'd just like to quickly respond to Mr. Benjamin's counsel's statement that Q is not available here. But that is the avenue that would be available to Mr. Benjamin to pursue his claim that the RO in 1981 or 1982 committed an error in deciding that he did not have a compensable form of schizophrenia. It was not until 2004 when a new medical examination was conducted that the doctor concluded that the type of schizophrenia Mr. Benjamin had was service-connected and related to a nervous condition that was identified in his records in 1974. What do you understand the term supplemental report? It seems like a simple enough term, but now I'm beginning to wonder if I'm not right in the assumption as to the meaning of that. Well, that is one thing that is slightly different in the new regulation. When the new regulation was adopted, VA wanted to make sure that supplemental report, which I think used to be sort of a term of art, was not too narrowly construed. It really relates to any service record of any kind that was not in the record at the time. I suspected that might be the case. If that's the case, am I right in thinking that the argument that Mr. Benjamin's making here is effectively going to, if adopted, would effectively mean that in most all cases, the effective date in a reopening would go all the way back to the initial claim? That's correct. I mean, right now the— Well, isn't it a defined narrow category of second reports where normally you only rely on the first? It's any report. Right. It could be a unit record. For instance, in the case of PTSD, if you have a unit record that shows that there was some sort of stressor, that is considered a supplemental report as well. I mean, traditionally it was considered to be service medical records, but now part of the new regulation was to make clear that it's to encompass all records. But the court is correct that Mr. Benjamin's interpretation will mean that any time a veteran seeks reconsideration of a claim based upon records that were considered originally, essentially a Q claim, he will get an earlier effective date without having to meet the more arduous standards for Q, showing that there was an error. And that is the avenue that's available to Mr. Benjamin here. He has been pursuing a claim that the regional office errored in 1981 or 1982 when it decided that his schizophrenia was not compensable. Do you have the name of that case that you mentioned earlier of ours in which we addressed a situation where the board rendered a decision on this, call it supplemental report? It's Slayton, S-L-A-Y-T-O-N. The court issued a Rule 36 decision in that case. Oh, well that's not... No, I know, but you had asked do I know of any... I know that there was a question in that case of whether or not the time frame was correct, but I know that the records were considered. I apologize, but that's the only one I'm aware of. It came out about a month ago. Unless the court has other questions, we would respectfully request that the Veterans Court's decision be affirmed. Thank you, Ms. Rossford. Mr. Bender has a minute to respond. Yes. As she pointed out, Slayton was a case that I had argued on the post-2006 version. It was a Rule 36 disposition that's non-precedential. We have no idea why it was denied. The Secretary did argue in this case, I believe, that subsection C would be applicable if the records here were received after the RO decision. At page 20 of their brief, they indicate that thus in referring to new and material evidence submitted before the decision has become final, section 3.156C plainly referred to evidence submitted after the decision was made, meaning the RO decision, but before the decision became final by the passage of the one year or the final disposition of the appeal. My question is, what's the difference between if the records were received before the RO decision and they didn't develop the claim as they should have at that point, and the record being received before the board issued its decision, wherein the board still had the same duty to develop or help develop the record? And I would also point out that in Cook, in response to your concerns about Q not being a claim, the Secretary pointed to 3.156 as a possible remedy for the veteran. Just very quickly, this is just my information. When you have an RO decision appealed to the board, when does that board decision or the decision in the case become final where there is an appeal to the board? Is there a period of time after the board decision during which an appeal can be taken to the DAVC? Yes. And it becomes final if that period expires without an appeal or if there is an appeal after the decision of the court? Well, the RO decision can become final if no appeal is perfected to the board. Right, I understand that. That's the one year. Yes, and if the board renders an adverse decision, there is a period of time within which they may take an appeal to the Veterans Court. If they don't do that, then the board decision has become final. Thank you, Mr. Fender. Thank you.